Climax Molybdenum Company and Pennsylvania Manufacturers' Association Insurance Co., Insurance Carrier, Appellants, *v.* Workmen's Compensation Appeal Board and Donald C. McCombs, Appellees.

Argued September 10, 1974, before Judges CRUM-LISH, JR., WILKINSON, JR. and ROGERS, sitting as a panel of three.

*Harold V. Fergus, Jr.,* with him *Fergus, Martin and Fergus,* for appellant.

*Kenneth J. Yablonski,* with him *James N. Diefender-fer,* for appellees.

OPINION BY JUDGE WILKINSON, October 8, 1974:

This is an appeal by the Climax Molybdenum Company from a decision of the Workmen's Compensation Appeal Board affirming the referee's order setting aside a final receipt and reinstating a compensation agreement.

Claimant-appellee suffered a compensable injury on March 5, 1967, when he injured his back while working for the appellant company. He entered into an agreement and was paid compensation for total disability until October 23, 1967, when he signed a final receipt. On June 16, 1970, claimant-appellee filed a petition to reinstate the 1967 agreement "which was suspended on October 13, 1969."[1]

---

[1] Claimant-appellee had entered into a second compensation agreement in the fall of 1969 for which a final receipt was executed

During the course of several hearings on this matter, claimant-appellee amended his petition[2] to a petition to set aside the final receipt executed on October 23, 1967. On October 4, 1972, the referee set aside the final receipt on the grounds of intentional or unintentional deception practiced by the appellant and reinstated the compensation agreement entered into in 1967. The referee awarded total disability commencing on April 14, 1970, the date claimant-appellee left work due to pain and discomfort in the same area of his back that had been injured in the 1967 accident. The referee found that there had been a recurrence of the March 5, 1967, injury and continued the compensation on into the future. The Workmen's Compensation Appeal Board affirmed.

The main issue presented in this case is whether the final receipt should be set aside on the basis of fraud or intentional or unintentional deception. If there is fraud or intentional or unintentional deception, Section 434 of the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, *as amended*, 77 P.S. §1001 (Supp. 1974-1975), which sets a two-year limitation on actions to set aside final receipts, will not apply.

Absent fraud or deception, the Legislature clearly intended that the failure to file for an additional award of compensation within the specified time should operate as an absolute bar of the right. The courts, however, can permit a claim to be filed after the two years

---

on November 3, 1969. This second final receipt indicates that claimant-appellee returned to work on October 13, 1969. The error in the original petition was corrected by the later amendment.

[2] Appellant contends that the referee erred in allowing an amendment to the original petition when the amendment referred to a separate accident. This argument is without merit in that it is clear from the record that the original petition, the amendment thereto, and all the proceedings in this matter were based on the same accident.

if fraud, which in this connection includes an unintentional deception, is shown. *Dennis v. E. J. Lavino and Co.*, 203 Pa. Superior Ct. 357, 201 A. 2d 276 (1964). The evidence to support such a claim must be clear and precise. *Thorn v. Strawbridge and Clothier*, 191 Pa. Superior Ct. 59, 155 A. 2d 414 (1959).

Although there is no affirmative duty on an employer to advise a claimant of his rights, an employer may not mislead an injured employe. *Dennis v. E. J. Lavino and Co., supra.*

Appellant contends that there is not sufficient evidence on which the referee could base a finding of deception. We disagree.

The final receipt in question was presented to the claimant-appellee on October 23, 1967, by a Mr. Wilgocky, an employe of appellant, whose duties involved handling of workmen's compensation cases at appellant's plant.

Claimant-appellee testified as follows: "Q. Did you realize at the time you signed this receipt that you were agreeing to a termination of your right to compensation under that agreement? A. No I didn't. Q. Had you been explained by the plant manager or anyone as to what was happening? A. No I hadn't. Q. Did they explain to you that they would give you your money even though you didn't sign a receipt? A. It was never mentioned. By the Referee: And then when you got to see Mr. Wilgocky, was there any conversation at that time? A. Yea, he said that sign this receipt that you received your money, that's what he told me."

Claimant-appellee presented further testimony from several witnesses that further substantiated the contention that Mr. Wilgocky did not explain the effect of the final receipt or actively represented it as a receipt for the last compensation check.

Mr. Wilgocky was the only witness called by appellant. He denied that he failed to explain the effect of

the final receipt. However, Mr. Wilgocky further testified: "By the Referee: And it's your testimony that you did tell the man that before he could get his compensation he was entitled to he had to sign the final receipt, isn't that what you testified to? A. That's right."

Where, as here, the Board has taken no additional evidence, we must rely on the facts as found by the referee if they are supported by substantial evidence. *Universal Cyclops Steel Corporation v. Krawczynski*, 9 Pa. Commonwealth Ct. 176, 305 A. 2d 757 (1973). Clearly there was substantial evidence to find that claimant-appellee had been either intentionally or unintentionally misled and deceived into signing the final receipt. A final receipt evidences the termination of an employer's liability for an injury. While it may be true that an employer is under no duty to explain this to an employe, the employer cannot rely on a receipt obtained under circumstances which lead an employe to believe that all he is signing is a receipt for his last compensation check and that he must sign the receipt in order to receive the check.

The effect of setting aside the final receipt was stated by Judge BLATT in *Maciupa v. Union Switch and Signal et al.*, 13 Pa. Commonwealth Ct. 126, 129-30, 317 A. 2d 901, 903 (1974): ". . .[T]he effect is to revive the compensation agreement automatically and to restore the parties to the position they would have been in if the receipt had never been signed. The issue then becomes the extent of the claimant's disability, and the burden of showing that such has been reduced from that payable under the compensation agreement is upon the defendant."

Appellant had ample opportunity during the several hearings conducted by the referee and the Board to present any evidence that the claimant-appellee's disability had been reduced or terminated. No such evidence was produced. On the contrary, the only evi-

254

dence in the record is the testimony of Dr. Vates which supports the referee's finding of total disability after April 14, 1970. Furthermore, from the unrebutted lay and medical testimony, there was sufficient evidence for the referee to find that the current disability resulted from the 1967 injury.

Accordingly, we enter the following

### Order

Now, October 8, 1974, the order of the Workmen's Compensation Appeal Board, dated November 13, 1973, is affirmed.